## Prindle & Company *v.* Kountz Brothers Company.

*Province of court and jury—Charge of court—Assumption of material fact by the court.*

It is error for the trial judge to withhold from the jury the determination of a material fact, although the evidence certainly would have warranted the finding of fact as assumed by the court.

*Gas well—Contract to drill and case well—Question for jury.*

Where the effect of a contract was to require plaintiffs to case the well and shut off all water which came in above any known gas-bearing sand before drilling into that stratum, and after all known gas-bearing sand had been passed to continue the drilling until the contract depth had been reached, but in case of discovery of a new gas-bearing sand to recase the well so as to shut off all water coming in above the newly discovered sand, the question is for the jury whether the last known gas-bearing sand had been passed when the plaintiff ceased work because of the refusal of defendants to pay without casing the well below that sand, and before the contract depth was reached, water having come in.

Argued April 27, 1900. Appeal, No. 148, April T., 1900, by defendants, in suit of R. A. Prindle & Company against the Kountz Brothers Company, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1899, No. 543, on verdict for plaintiffs. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed. Opinion by W. D. PORTER, J.

Assumpsit. Before KENNEDY, P. J.

FACTS AS STATED BY THE SUPERIOR COURT.

[The contract upon which this action is founded provided that the plaintiffs should drill a well to the depth of 2,200 feet, if by the defendants required so to do ; that the defendants should have the right to suspend operations before that depth was reached and pay for the depth actually drilled at a stipulated rate per foot ; and that no part of the contract price should become due or payable until the completion of the well. The well was drilled and cased, so as to shut out the water, in strict accordance with the terms of the contract, to a point eighty feet below the stratum known as the fifth sand ; at that point, which was 2,012 feet below the surface, a vein of water was encountered and a controversy arose between the parties as to whether under the terms of the contract the plaintiffs were required to draw the casing, ream the hole and recase the well so as to shut off that flow of water. The defendants demanded that the well be completed to the full depth of 2,200 feet. There was a conflict in the evidence as to whether this demand was simply that the well be completed to that depth in the manner required by the contract, or the defendants undertook to impose a condition that the drilling should be done in a certain manner. The plaintiffs produced evidence which tended to establish that the defendants had notified them that they would not pay for drilling the well unless the plaintiffs drew the casing, reamed the well, and extended the casing down so as to shut off this lower flow of water which had been encountered. The defendants introduced evidence which tended to contradict this and show that they had simply notified the plaintiffs to go on and finish the well, in the manner specified in the contract to the depth of 2,200 feet. This was the only question of fact submitted to the jury by the learned court below. The jury found in favor of the plaintiff, which establishes the fact that the defendants notified the plaintiffs that they would not accept the well and would not pay for drilling it unless the casing was extended down past the stream of water which came in at a point eighty feet below the fifth sand.]

The court charged the jury in part as follows :

[Under the terms of the contract the plaintiffs could have been compelled to bore the well to a depth of 2,200 feet, if re-

quired by the defendants. It is admitted that they did not bore it to a depth of 2,200 feet, but to something over 2,000 feet. It is contended on behalf of the plaintiffs that they were relieved from going any deeper by the demands of the defendants themselves ; that they at first directed the plaintiffs to proceed with the well, after it had reached this depth of 2,000 feet and upwards, and had reached a flow of water, that they then directed the plaintiffs to proceed with the boring, but the following day countermanded that order, and demanded that the casing be drawn, and the well reamed, and new casing put in to shut off this water that had been discovered at the depth of upwards of 2,000 feet. They gave the plaintiffs notice that they would not accept the well, or pay for the expense of boring it unless the plaintiffs did so. Now if that is the case, the plaintiffs were relieved from going any further. If the defendants countermanded the order to bore the well this additional depth, wet, and demanded that it should be cased and reamed out, it would relieve the plaintiffs from finishing the well in the manner demanded by the defendants. The defendants now say that they demanded that the plaintiffs complete the well, without imposing any conditions. The testimony upon that subject was that of Mr. Kreitzer who said that he, under instructions from the defendant, notified the plaintiffs to proceed and finish the well, without stipulating that it must be finished or bored to a greater depth dry. He says that he did not couple it with any condition ; he simply told the plaintiffs to go on and finish the well. Mr. Kountz, who was subsequently called, says that he demanded that they go on and finish the well. He admits that in the conversation this discussion about drilling it wet or dry was all gone over, and that it was understood that the well was to be finished dry, although he says he demanded it to be finished in accordance with the terms of the contract. The question for you to determine is, did the defendants require or demand that the plaintiffs bore the well to the depth of 2,200 feet, without imposing the conditions that we have heard from the evidence in the case. If they did so demand, the plaintiffs would be required to bore the well to the depth of 2,200 feet, and failing to do that, they would not be entitled to recover in this case. In other words, they cannot recover until they bore the well to the depth required by the

contract, if it has been demanded or required of them by the defendants. They say that this demand was not made of them, except coupled with the condition that the well must be cased, the casing drawn and the well reamed out and new casing put in to shut off this water that had been discovered at this extraordinary depth. If the demand was coupled with that condition, they would not be required to do so, if the defendants gave them notice at the same time that they would not pay, or would not accept the well unless they did so.] [2]

Verdict and judgment for plaintiffs for $1,419.21. Defendants appealed.

*Errors assigned* were (1) in overruling defendant's objection to plaintiff's offer to prove that there were conversations between the plaintiff and defendant at the time of signing of this contract, designating and explaining what was meant by the clause " the gas-bearing sand " in the fifth section of this contract. (2) To a portion of the judge's charge, reciting same. (3) After the admission of the testimony referred to in the first assignment of error, the court erred in failing to submit to the jury to find whether or not the parties mutually understood that the gas-bearing sand mentioned in the contract referred to the fifth sand in defendant's property where the well was to be drilled. (4) In refusing binding instructions for defendant.

*D. F. Patterson*, for appellant.—If the contractor refuses to accept the other party's interpretation of the contract, he must complete the work according to his own interpretation, because he is to receive nothing until the completion of the work. Here the work was never completed, nor its completion prevented by the appellant, and hence there could be no recovery for the work that was done : Hartman v. Meighan, 171 Pa. 46, cited in Fisher v. Mershon, 9 Pa. Superior Ct. 238.

*Alvin C. Spindler*, for appellees.—The facts being undisputed the construction of the writing was for the court : Edelman v. Leakel, 27 Pa. 26. The refusal of defendant to accept performance from the other party according to the terms of the contract is sufficient to warrant the plaintiff in treating the contract as at an end : Grove v. Donaldson, 15 Pa. 128.

OPINION BY W. D. PORTER, J., October 8, 1900 (after stating the facts as set out in the statement of facts):

The jury found in favor of the plaintiff; which establishes the fact that the defendants notified the plaintiffs that they would not accept the well and would not pay for drilling it unless the casing was extended past the stream of water which came in at a point eighty feet below the fifth sand.

If under the terms of the contract the plaintiffs were bound to do the work in this manner they are not entitled to recover. If the contract did not require the work to be done in this manner, then the notice by the defendants that they would not pay for it unless so done must be considered as an election upon their part to cease operations under the contract at any time, and the plaintiffs must be held to have completed the well and be entitled to compensation for the depth drilled. The manner in which and the time at which the plaintiffs were required to case the well must be ascertained from the fifth and sixth clauses of the contract, which are in the following language:

"5. If water is discovered between the bottom of casing and gas-bearing sand, then the contractor will be required to draw casing, and ream hole and recase to shut off said water without cost to the Kountz Bros. Co.

"6. Before drilling into the gas-bearing sand the well shall be shut down for twenty-four hours to admit being tested by the superintendent of the Co."

It is manifest that "the gas-bearing sand" referred to in the sixth clause was a stratum, the location of which in the geological measures of that field was so well known that the driller by keeping a record of the superimposed strata through which the well passed would know when his drill was about to enter that stratum. Before drilling into that sand he was required to cease operations for twenty-four hours in order that the agent of the defendant company might thoroughly examine the condition of the well and be satisfied that it was free from water before the drill was permitted to penetrate the stratum where they hoped to find the gas. The written contract did not attempt to define the place of that stratum among the measures of that field, but it recognized it as a sand so well known that the operator would know where it was or where it ought to be before he reached it. This was clearly a case for the ad-

mission of parol evidence to determine the location of this stratum, which was so well known that the parties did not take the precaution to incorporate in the written contract any provision which would have rendered its location possible without the aid of oral evidence.    The first assignment of error is without merit.

The sixth clause of the contract has reference only to the gas-bearing sand which has been discovered by previous explorations in that field and become definitely known.    It was only before drilling into such sands that the plaintiffs were required to suspend operations for twenty-four hours.    This clause refers to a definite and particular stratum.    After that stratum had been passed the plaintiffs were not required to case the well down so as to shut off a vein of water coming in at a lower level, unless in the actual execution of the work it was discovered that water was coming into the well at some point between the bottom of the casing and some lower and until that time unknown gas-bearing sand.    The fifth clause is broader, it refers not to a particular sand but covers any sand which actually produces gas, and would require the plaintiffs to ream down the hole and extend the casing so as to shut off any water coming in between the bottom of the casing and any gas-bearing sand which might be discovered by drilling the well below the deepest gas-bearing sand then known to exist in that field. But, while the fifth clause is thus broad, it entirely omits the stringent provisions with regard to casing and shutting down the well before drilling into the sand which we find in the sixth clause.    After the lowest known gas-bearing sand had been passed, the work was experimental; the drill was in unfamiliar measures; the parties could not tell what the next stratum which the drill penetrated might bring forth.    If water came in after the deepest known gas-bearing sand had been passed, it could not be said to come in between the bottom of the casing and gas-bearing sand until some lower and previously undiscovered gas-bearing sand was penetrated by the drill.    The joint effect of these clauses was to require the plaintiffs to case the well and shut off all water which came in above any known gas-bearing sand before drilling into that stratum, and after all known gas-bearing sands had been passed to continue the drilling to the contract depth, but in case they had

discovered a new gas-bearing sand they must at once recase the well so as to shut off all water coming in above that newly discovered sand.

There was no evidence that any new gas-bearing sand had been discovered. It was conceded that the well was properly cased above the fifth sand. The plaintiffs offered evidence which, if believed, tended to establish that the fifth sand was the lowest known gas sand in that field, but this evidence was oral and the credibility of the witnesses was for the jury. The learned court below, in the language which is complained of in the second assignment of error practically assumed as an established fact that the fifth sand was the lowest gas-bearing sand and withdrew the consideration of that question from the jury. While the evidence certainly would have warranted the finding of the fact as assumed by the court, we are constrained to hold that the question was for the jury, and the second assignment of error must be sustained.

The court was not requested to charge in the manner suggested in the third assignment of error. To have affirmed the defendants' request for binding instructions would have been error. The third and fourth specifications are dismissed.

The judgment is reversed and a venire facias de novo awarded.